## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JACOB GATES,

              Plaintiff,

      v.

THE GRIER FOUNDATION and
GEOFFREY GRIER,

              Defendants.

No. 4:23-CV-01443

(Chief Judge Brann)

## MEMORANDUM OPINION

### JANUARY 17, 2024

Before the Court is Defendants The Grier Foundation's and Geoffrey Grier's Motion to Dismiss Plaintiff Jacob Gates' Complaint. In his Complaint, Gates alleges that Defendants improperly revoked an employment offer after learning that he had been convicted of misdemeanor trespass as a minor more than ten years prior. For the reasons explained below, the Court will grant Defendants' Motion in part and grant Gates leave to amend his Complaint.

## I.    BACKGROUND[1]

On June 13, 2023, Jacob Gates accepted an offer of employment for a position as a History Teacher with The Grier Foundation (the "Grier School").[2] Gates accepted the offer, which included an annual salary and faculty housing and food,

---

[1]   As explained below, for the purpose of this motion, the Court accepts as true all well-pleaded allegations contained in the Complaint. *See infra* Section II.

[2]   Compl., Doc. 1 ¶ 7.

on June 15, 2023.[3] To finalize, secure, and formally accept the offer of employment, Gates was required by the Grier School to obtain an FBI Fingerprint Clearance from IdentoGO by IDEMIA.[4] The background check (the "IdentoGO Report") showed that, in 2009, Gates pleaded guilty to two misdemeanor counts of trespassing.[5] The convictions arose from an incident in which Gates, then 17 years old, entered and took a beer from the open garage of a neighbor.[6]

Upon receipt of the IdentoGO Report, Grier School Director Geoffrey Grier and Head of School Kara Lawler called Gates to rescind the offer of employment.[7] During the phone call, Gates was accused of being "dishonest," a "felon," and having acted in "bad faith."[8] Gates explained that the convictions had been expunged in 2020 and both he and his attorney Sally Slipian sent Lawler and Human Resources Officer Lea Crofcheck records confirming as much.[9] Neither Lawler or Crofcheck responded, nor did anybody at the Grier School inform Gates of his right to dispute the accuracy of the IdentoGO Report.[10] On July 20, 2023, Gates received a letter from an attorney representing the Grier School stating that, after "carefully

---

3   *Id.* ¶¶ 10-11.
4   *Id.* ¶ 13. The parties refer to IdentoGO as IdentiGo.
5   *Id.* ¶ 15.
6   *Id.* ¶¶ 15-16.
7   *Id.* ¶ 17.
8   *Id.* ¶¶ 18-19.
9   *Id.* ¶¶ 21-22.
10  *Id.* ¶¶ 23-24.

review[ing]" the expungement documents, it had decided to uphold the termination of Gates' employment offer.[11]

Gates then initiated this litigation on August 20, 2023 with the filing of a Complaint alleging violations of the Fair Credit Reporting Act[12] and the Pennsylvania Criminal History Record Information Act.[13] Defendants moved to dismiss the Complaint on November 6, 2023.[14] Defendants' Motion is fully briefed and ripe for disposition.[15]

## II.   LAW

"Under Article III, a case or controversy can exist only if a plaintiff has standing to sue."[16] "To establish Article III standing, a plaintiff bears the burden of showing three 'irreducible' elements."[17] "He 'must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'"[18] "Injury in fact is ''the invasion of a concrete and particularized legally protected interest' resulting in

---

[11]  *Id.* ¶ 25.
[12]  *Id.* Count II.
[13]  *Id.* Count I.
[14]  Mot. to Dismiss, Doc. 9.
[15]  Br. in Supp. ("BIS"), Doc. 12; Opp. ("BIO"), Doc. 15; Reply, Doc. 16.
[16]  *United States v. Texas*, 599 U.S. 670, 675 (2023).
[17]  *Associated Builders & Contractors W. Pennsylvania v. Cmty. Coll. of Allegheny Cnty.*, 81 F.4th 279, 287 (3d Cir. 2023) (citing *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 244 (3d Cir. 2012); *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).
[18]  *Id.* (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)).

harm 'that is actual or imminent, not conjectural or hypothetical.'"[19] "'An injury is 'concrete' if it is 'real, or distinct and palpable, as opposed to merely abstract.'"[20]

"A motion to dismiss for want of standing is . . . properly brought pursuant to [Federal Rule of Civil Procedure] 12(b)(1), because standing is a jurisdictional matter."[21] Where a movant raises a facial challenge to standing—whether the Complaint alleges facts sufficient to establish constitutional standing—courts "apply the same standard as on review of a motion to dismiss under Rule 12(b)(6)."[22]

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal for "failure to state a claim upon which relief can be granted." The United States Court of Appeals for the Third Circuit has instructed that, under the standard established by the Supreme Court of the United States in *Bell Atlantic Corp. v. Twombly*[23] and *Ashcroft v. Iqbal*,[24] a court reviewing the sufficiency of a pleading must take three steps: (1) "take note of the elements the plaintiff must plead to state a claim"; (2) "identify allegations that, because they are no more than conclusions, are not entitled to the

---

[19]  *Long v. Se. Pennsylvania Transportation Auth.*, 903 F.3d 312 (3d Cir. 2018) (quoting *Finkelman v. Nat'l Football League*, 810 F.3d 187, 193 (3d Cir. 2016); *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 278 (3d Cir. 2014)).

[20]  *Id.* (quoting *Finkelman*, 810 F.3d at 193; *N.J. Physicians, Inc. v. President of the U.S.*, 653 F.3d 234, 238 (3d Cir. 2011)).

[21]  *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007).

[22]  *In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 632-33 (3d Cir. 2017).

[23]  550 U.S. 544 (2007).

[24]  556 U.S. 662 (2009).

assumption of truth"; and (3) "assume the[] veracity" of all "well-pleaded factual

allegations" and then "determine whether they give rise to an entitlement to relief."[25]

## III.   ANALYSIS

### A.   Fair Credit Reporting Act (Count II)

#### 1.   Standing

The Fair Credit Reporting Act[26] imposes certain duties on users of consumer

reports, including that:

> [A]ny person [who] takes any adverse action with respect to any
> consumer that is based in whole or in part on any information contained
> in a consumer report . . . shall . . . provide to the consumer an oral,
> written, or electronic notice of the consumer's right . . . to dispute,
> under [15 U.S.C. § 1681i], with a consumer reporting agency the
> accuracy or completeness of any information in a consumer report
> furnished by the agency.[27]

Even if the Court assumes Gates' Complaint is sufficient to state a claim that

Defendants violated FCRA's notice requirement, that alone does not establish

standing. "Article III standing requires a concrete injury even in the context of a

statutory violation."[28] Gates cannot "allege a bare procedural violation, divorced

from any concrete harm, and satisfy the injury-in-fact requirement of Article III."[29]

---

[25] *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal quotations and citations omitted).

[26] 15 U.S.C. § 1681 *et seq.*

[27] 15 U.S.C. § 1681m(a)(4)(B).

[28] *Spokeo*, 587 U.S. at 341.

[29] *Id.* (citing *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009); *Lujan*, 504 U.S. at 572).

Defendants argue that is just what Gates has done. In support, they direct the Court to the opinion of our Court of Appeals in *Long v. SEPTA*.[30] Defendants assert that the Third Circuit in *Long* held that an employer's failure to provide an unsuccessful job applicant notice of their FCRA rights is a "mere procedural violation" and insufficient to establish standing.[31] Gates argues that the failure to notify him of his right to dispute the IdentoGo Report denied him the opportunity to "fix his inaccurate record with IdentoGo by IDEMIA and re-submit fingerprints for an accurate record."[32]

In *Long*, the Third Circuit held that the fact that the plaintiffs were able to bring a lawsuit within the statute of limitations for a FCRA suit was sufficient to show that plaintiffs were not injured.[33] This case is distinguishable because Gates has argued that the failure to inform him of his right to challenge the Report *with IDEMIA* denied him the opportunity to correct the record and have his employment application considered with the benefit of a new, accurate report.[34] That Gates was able to file a lawsuit weeks after having his employment offer revoked does not negate the harm that Gates alleges he suffered.[35]

---

[30]  BIS 7 (discussing 903 F.3d 312 (3d Cir. 2018)).
[31]  *Id.*
[32]  BIO 5.
[33]  903 F.3d at 325.
[34]  BIO 5.
[35]  The Court notes that the right to dispute the accuracy of a report includes more than the right to file a lawsuit. *See* 15 U.S.C. § 1681i ("Procedure in case of disputed accuracy") (cited by 15 U.S.C. § 1681m(4)(B)).

Nevertheless, Gates concedes that he was able to challenge the accuracy of the report with the School itself. He claims that he explained to Grier and Lawler that his convictions were expunged and that he and his attorney sent records to Lawler and Crofcheck reflecting as much. Further, he "received a letter from the Grier School's attorney, which stated that the Grier School 'carefully reviewed' the expungement documents but upheld its termination of Mr. Gates' employment offer."[36]

Defendants were aware that the IdentoGO Report was inaccurate when they affirmed their decision to revoke his employment offer. Therefore, the allegations of Gates' complaint are insufficient to show that, even if he had been able to contest the accuracy of the Report, it would have had any impact on Defendants' decision. As such, he has failed to demonstrate that he was harmed by the alleged FCRA violation.

Therefore, the Court will grant Defendants' Motion as to Count II without prejudice. Gates may amend his Complaint if he is able to allege facts sufficient to show that, if he were aware of his right to contest the accuracy of the IdentoGO Report with IDEMIA, it would have had an impact on his pending job offer. However, he is advised not to attempt to stave off dismissal by simply creatively re-

---

[36]   Compl. ¶ 25.

stating facts already alleged. If there are no new facts to be alleged, or existing facts that may be alleged more completely, amendment is discouraged.

### 2.    Failure to State a Claim

As the Court will allow Gates the opportunity to amend his Complaint, the Court will address the balance of Defendants' arguments for dismissal so as to avoid piecemeal amendments. Defendants argue that, even if Gates has standing to assert his FCRA claim, he has failed to state a claim upon which relief can be granted as the IdentoGO Report "does not constitute a 'consumer report' because it was not obtained by a 'consumer reporting agency'" as defined by FCRA.[37]

> FCRA defines "consumer reporting agency" as:
>
> any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.[38]

Defendants argue that "[t]he Complaint contains no averments that IdentoGO; 1) for monetary fees, dues, or on a cooperative nonprofit basis; 2) regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers 3) for the purpose of furnishing

---

[37]   BIS 13 (citing 15 U.S.C. § 1681a(d)(1)).
[38]   15 U.S.C. § 1681a(f).

consumer reports to third parties; 4) using means or facility of interstate commerce."[39]

Defendants also argue that the report is not a "consumer report" because it was furnished to Gates himself, not a third party, and because IdentoGO "did not 'assemble or evaluate' the FBI criminal background check."[40] FCRA defines a consumer report, in relevant part, as:

> any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for . . . employment purposes.[41]

In support of this argument, Defendants direct the Court to other cases where courts have held that the "'assembling' or 'evaluating' requirement 'implies a function which involves more than receipt and retransmission of information'" such as receiving a background check from the FBI and transmitting it to the consumer.[42]

However, the definition of consumer report does not include the "assemble or evaluate . . . for the purpose of furnishing consumer reports to third parties" language. That appears only in the definition of "consumer reporting agency." Under a strict reading of the text of the statute any entity which "regularly engages in the

---

[39]   BIS 11.
[40]   *Id.* at 12.
[41]   15 U.S.C. § 1681a(d)(1)(B).
[42]   BIS 12-13 (quoting *Drees v. Hartford Fin. Servs. Grp., Inc.*, CIV. 10-5430, 2013 WL 1750011, at *7 (D.N.J. Apr. 23, 2013) and collecting cases).

practice of assembling or evaluating . . . information on consumers for the purpose of furnishing consumer reports to third parties" is a consumer reporting agency.[43] Then, "*any* written, oral, or other communication of *any* information by [that entity] bearing on a consumer's [qualifications] which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for employment purposes" is a consumer report under FCRA.[44] In short, as long as IdentoGO "regularly engages in the practice of assembling or evaluating" information, any communications of information expected to be use to adjudge a consumer's qualifications for employment are subject to the requirements of FCRA. Therefore, the text of FCRA does not include any requirement that it do any "assembling or evaluating" on the report in question.

This interpretation is consistent with, if not compelled by that of the Third Circuit in *Cortez v. Trans Union, LLC*,[45] where the Court held that an OFAC alert,[46] which was provided with a credit report, was a "consumer report" under FCRA.[47] The Third Circuit found that Trans Union's argument to the contrary "ignore[d] the breadth of the language that Congress used in drafting [FCRA];" namely, that a

---

[43]   15 U.S.C. § 1681a(f).

[44]   15 U.S.C. § 1681a(d)(1)(B) (emphasis added).

[45]   617 F.3d 668 (3d Cir. 2010).

[46]   An OFAC alert, as provided by Trans Union in *Cortez*, warns potential creditors that an individual may be on a list of individuals compiled by the Treasury Department's Office of Foreign Assets Control with whom "U.S. persons are generally prohibited from dealing with." *Id.* at 696, 707 (citations removed).

[47]   *Id.* at 707.

consumer report includes "*any* . . . communication of *any* information by a consumer reporting agency" bearing on an individual's qualifications for an enumerated purpose and which is expected to be used for that purpose.[48]

"It is well established that a court must 'give effect to a statute's unambiguous plain language unless it produces a result demonstrably at odds with the intentions of the drafters . . . or an outcome so bizarre that Congress could not have intended it.'"[49] It could be argued that a definition of consumer reports which includes communications made by entities which, though they may otherwise be consumer reporting agencies, are not communications of the sort that would themselves bring the entity within FCRA is an appropriately "bizarre" outcome. However, it is also plausible that Congress intended to hold entities which "regularly" "assemble" or "evaluate" consumer information to a higher standard, even regarding communications that do not require such assembling or evaluation. Such a definition would also close the loophole that Defendants try to exploit, where an employer can circumvent FCRA's obligations by having an applicant retrieve the report themselves, then forward it to the employer.[50]

---

[48]  *Id.* (quoting 15 U.S.C. § 1681a(d)(1), emphasis in original).

[49]  *United States v. Safehouse*, 991 F.3d 503, 507-508 (3d Cir. 2021) (Bibas, J. dissenting from denial of rehearing).

[50]  As the Complaint itself does not allege that the IdentoGO Report was first sent to the Pennsylvania Department of Education—Gates asserts this for the first time in his opposition—the Court will not address the merits of that allegation or the parties' respective arguments. *See Reed v. Chambersburg Area Sch. Dist.*, 951 F. Supp. 2d 706, 720 (M.D. Pa. 2013) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to

11

The Court also notes that such a reading is not so broad as to encompass communications that Congress plainly did not intend to regulate. In all cases, the definition of consumer reports is limited to communications which are "used or expected to be used" for certain purposes enumerated by the statute.[51] Nor is it inconsistent with the authorities Defendants cite in support of their argument to the contrary.[52] Finally, the Court is unconvinced that IdentoGO is so "remote from the one making the relevant . . . employment decision."[53]

Ultimately, Gates has not alleged facts sufficient for the Court to find that IdentoGO is covered by any definition of consumer reporting agency. Though the Court does not agree with Defendants interpretation of the relevant FCRA

---

a motion to dismiss.") (quoting *Car Carriers, Inc. v. Ford Motor Co.,* 745 F.2d 1101, 1107 (7th Cir.1984), *cert. denied,* 470 U.S. 1054 (1985)).

[51] 15 U.S.C. § 1681a(d)(A)-(C). *Cf. D'Angelo v. Wilmington Med. Ctr., Inc*., 515 F. Supp. 1250, 1253 (D. Del. 1981) (noting that FCRA does not reach reports used for business purposes).

[52] *Cf. Howard v. Blue Ridge Bank*, C 04-04619 SI, 2005 WL 1865418, at *2 (N.D. Cal. Aug. 1, 2005) (defendant asserts it is not a reporting agency because "it *never* furnished its reports to third parties") (emphasis added); *Drees*, 2013 WL 1750011, at *7 (finding that entity in question was a "reseller" under FCRA in part because it "d[id] not maintain any database of information and pulled the report"); *Mix v. JPMorgan Chase Bank, NA*, CV-15-01102-PHX-JJT, 2016 WL 5850362, at *5 (D. Ariz. Oct. 6, 2016) (granting summary judgment where defendant provided evidence indicating that the relevant entity "acts as a conduit" and performs "only 'channeler' functions"); *Smith v. Busch Entm't Corp.*, No. CV-3:08-772-HEH, 2009 WL 1608858, at *3 (E.D. Va. June 3, 2009) (holding that governmental entity was not a reporting agency and observing that holding otherwise would "give rise to a host of potential constitutional issues" such as derogation of Eleventh Amendment immunity); *Ori v. Fifth Third Bank, & Fiserv, Inc.*, 603 F. Supp. 2d 1171, 1175 (E.D. Wisc. 2009) (granting motion to dismiss where plaintiff's allegations did not indicate whether relevant entity "assembles or evaluates consumer credit information" generally); *DiGianni v. Stern's*, 26 F.3d 346, 349 (2d Cir. 1994) (retailer that sent information to consumer reporting agency to be evaluated not a reporting agency itself); *D'Angelo*, 515 F. Supp. at 1253 (same).

[53] *Cf.* BIS 13 (quoting *D'Angelo*, 515 F. Supp. at 1253).

provisions, Gates still fails to allege facts regarding the types of analysis or evaluation of consumer information, if any, IdentoGO conducts in the regular course of its business. Therefore, his FCRA claim is also subject to dismissal on that ground.

**B.    Pennsylvania Criminal History Information Act (Count I)**

The Court begins by noting that dismissal of Gates' FCRA claim is sufficient to divest the Court of jurisdiction over the sole remaining claim, brought under Pennsylvania state law.[54] However, as above, the Court will consider the parties' arguments as to Count I in the interest of judicial economy should Gates choose to amend his complaint.

Gates brings a claim under Section 9125 of the Pennsylvania Criminal History Records Information Act which limits how employers may use information which is part of an applicant's "criminal history information" for the purpose of deciding whether to hire the applicant:

> Felony and misdemeanor convictions may be considered by the employer only to the extent to which they relate to the applicant's suitability for employment in the position for which he has applied.[55]

Defendants first argue that the Report is not "criminal history record information,"[56] which 18 Pa. C.S. § 9102 defines as:

> Information collected by criminal justice agencies concerning individuals, and arising from the initiation of a criminal proceeding, consisting of identifiable descriptions, dates and notations of arrests,

---

[54]   18 Pa. C.S. § 9101 *et seq.*
[55]   18 Pa. C.S. § 9125(a)-(b).
[56]   BIS Section VII.A.

indictments, informations or other formal criminal charges and any dispositions arising therefrom. The term does not include intelligence information, investigative information or treatment information, including medical and psychological information, or information and records specified in section 9104 (relating to scope).[57]

Section 9102 further defines "criminal justice agency" as:

Any court, including the minor judiciary, with criminal jurisdiction or any other governmental agency, or subunit thereof, created by statute or by the State or Federal constitutions, specifically authorized to perform as its principal function the administration of criminal justice, and which allocates a substantial portion of its annual budget to such function. Criminal justice agencies include, but are not limited to: organized State and municipal police departments, local detention facilities, county, regional and State correctional facilities, probation agencies, district or prosecuting attorneys, parole boards, pardon boards, the facilities and administrative offices of the Department of Public Welfare that provide care, guidance and control to adjudicated delinquents, and such agencies or subunits thereof, as are declared by the Attorney General to be criminal justice agencies as determined by a review of applicable statutes and the State and Federal Constitutions or both.[58]

Defendants argue that IdentoGO, the Pennsylvania Department of Education, and the FBI are not criminal justice agencies as defined by CHRIA, therefore any criminal history information provided by them cannot be "criminal history record information."[59] As the Third Circuit has noted, even when referring only to the second sentence of the definition, "[i]t is difficult to understand how a more expansive definition of a criminal justice agency could be written."[60] At first glance,

---

[57] 18 Pa. C.S. § 9102.

[58] *Id.*

[59] BIS 15-16.

[60] *Taha v. Cnty. Of Bucks*, 862 F.3d 292, 306 (3d Cir. 2017) (citing 18 Pa. C.S. § 9102).

14

the sweeping references to federal law would seem to encompass federal law enforcement agencies such as the FBI.[61] However, the lengthy list of examples included in the definition includes only state or local entities.[62] Further, a table in the CHRIA Handbook published by the Pennsylvania Office of the Attorney General counts exactly 1,804 criminal justice agencies, all of which are agencies of the Commonwealth or its political subdivisions.[63]

In a vacuum then, Defendants' position that Section 9125 applies only to convictions contained in Pennsylvania criminal history records—permitting employers to consider any out-of-state or federal convictions, even if they could not consider an analogous violation of Pennsylvania law—is supported by the text of the statute. However, Section 9102 also provides that the words and phrases used in CHRIA "shall have the meanings given to them in this section *unless the context clearly indicates otherwise*."[64] When Section 9125 is read in the context of the larger body of Pennsylvania law, Defendants' position becomes untenable.

Section 1-111 of the Public School Code of 1949 governs the eligibility for employment by a school of certain prospective employees[65] with prior criminal

---

[61]    Aside from the explicit reference to the United States Constitution, it is hardly obvious that "statutes" would not also include federal statutes.

[62]    *See Begay v. United States*, 553 U.S. 137, 142 (2008) (presence of list of examples in statute indicates that the statute encompasses only that which is similar to the listed examples).

[63]    Comm. of Pa. Office of Att'y Gen., *Criminal History Record Information Handbook* 4-5, 25 (7th Ed. 2013).

[64]    18 Pa. C.S. § 9102 (emphasis added).

[65]    Section 1-111 applies to employees and prospective employees which have direct contact with children. 24 P.S. § 1-111(a.1).

convictions.[66] It requires that prospective employees submit, pursuant to CHRIA, "a report of criminal history record information from the Pennsylvania State Police or a statement from the Pennsylvania State Police that the State Police central repository contains no such information."[67] As amended in 2007, the statute also requires applicants "to submit with the application for employment a copy of the Federal criminal history record" which is to be obtained through the fingerprinting process Gates went through.[68]

Once the employer has those two reports—the CHRIA criminal history record and the Federal criminal history record—it must then determine whether "a report of criminal history record information" indicates that the applicant has been convicted of an offense identified by the statute, including violations of certain enumerated Pennsylvania laws and any federal or foreign analogues.[69] Under the Public School Code then, "criminal history record information" must include both the CHRIA record and the Federal record.

---

[66] 24 P.S. § 1-111(e).

[67] 24 P.S. § 1-111(b).

[68] *Compare* 24 P.S. § 1-111(c.1) *with* Compl. ¶¶ 13-14. *See also* Penn. Dept. of Ed., *Clearances/Background Checks* (last accessed Jan. 11, 2024), https://www.education.pa.gov /Educators/Clearances/Pages/default.aspx (describing background check process). The Court may take judicial notice of information contained on the Pennsylvania Department of Education's website. *Landair Transp., Inc. v. Del's Truck & Auto Repair*, No. 1:17-CV-0723, 2018 WL 950208 at *2 n.1 (M.D. Pa. Feb. 20, 2018) (citing *Abulkhair v. Comm'r of Soc. Sec.*, 450 Fed.Appx. 117, 119 n.3 (3d Cir. 2011); *accord Morgan v. Pennsylvania*, No. 4:23-CV-00872, 2023 WL 6461245 at *3 (M.D. Pa. Oct. 2, 2023) (Brann, J.) (citing *In re Google Inc.*, 806 F.3d 125, 133 n.12 (3d Cir. 2015). *See also Vanderklok v. United States*, 868 F.3d 189, 205 n.16 (3d Cir. 2017)).

[69] 24 P.S. § 1-111(e)-(f.2) (identifying certain offenses).

Pennsylvania law instructs that "[s]tatutes or parts of statutes are *in pari materia* when they relate to the same persons or things or to the same class of persons or things" and that such statutes "shall be construed together, if possible, as one statute."[70] Section 9125(b), which prohibits employers from basing hiring decisions on prior criminal convictions except to the "extent to which they relate to the applicant's suitability for employment in the position for which he has applied," and Section 1-111, which delineates offenses that relate to the suitability for employment in certain positions at schools, are such statutes. Reading them together, the Court finds that Section 9125 limits the extent to which employers can consider all criminal convictions, not just those which appear in records maintained by Pennsylvania criminal justice agencies.

In reaching this conclusion, which appears to be a matter of first impression, the Court also considers that the Pennsylvania Supreme Court has long recognized "the deeply ingrained public policy of [Pennsylvania] to avoid unwarranted stigmatization of and unreasonable restrictions upon former offenders."[71] In accordance with that policy, Pennsylvania courts are wary of such restrictions which unnecessarily "foreclose a permissible means of gainful employment."[72] Therefore,

---

[70]   1 Pa. C.S. § 1932.

[71]   *Secretary of Revenue v. John's Vending Corp.*, 309 A.2d 358, 362 (Pa. 1973).

[72]   *Id.*; *see also Ake v. Bureau of Prof'l and Occupational Affairs*, 974 A.2d 514 (Pa. Commw. Ct. 2009) (finding that prior Illinois conviction did not bear on qualifications for professional licensure, validating plaintiffs' challenge brought under CHRIA); *Megraw v. Sch. Dist. of Cheltenham Twp.*, No. 577 C.D. 2017, 2018 WL 2012130 at *6-8 (Pa. Commw. Ct. May 1,

if the Pennsylvania Supreme Court were to consider the question, the Court believes that it would not adopt the reading advanced by Defendants.

The Court is similarly unpersuaded by Defendants' argument that CHRIA and the Public School Act of 1949 are "irreconcilable" because Section 1-111(f.2) of the latter permits employers, in their discretion, to consider convictions that do not bear on the applicant's suitability for employment.[73] Defendants insist that Pennsylvania law, which requires irreconcilability between a general provision in an earlier enacted statute and a special provision in a later enacted statute to be resolved in favor of the latter, compels this reading.[74] Defendant's argument here fails at the first step, because the Court does not read 24 P.S. § 1-111(f.2) as permitting employers to arbitrarily consider an applicant's or employee's irrelevant prior convictions.[75] Rather, 24 P.S. § 1-111(f.2) permits employers to consider prior convictions which, though they may not fall within the offenses identified in subsection (e), may nonetheless bear on an applicant's suitability for employment in the relevant position, which is consistent with limitations imposed by 18 Pa. C.S. § 9125.

---

2018) (discussing the "large[] corpus of case law dating back to 1973" in which courts have validated challenges to statutory employment bans predicated on prior convictions).

[73] BIS 19 n.6; Reply 13-14.

[74] BIS 19 n.6 (citing 1 Pa. C.S. § 1933).

[75] *See Megraw*, *supra* n.72. Defendant's argument that Section 1-111(f.2) permits consideration of irrelevant convictions is antithetical to the well-established practice of Pennsylvania courts sustaining challenges brought by individuals who are convicted of offenses that are actually identified by Section 1-111 and similar statutes. *See e.g.*, *id.* at *10 (holding that the school district defendant could not defend the termination of an employee by referring to deficiencies in his past "that would not have otherwise resulted in the loss of his job") (citing *Johnson v. Allegheny Intermediate Unit*, 59 A.3d 10, 24-25 (Pa. Commw. 2012)).

To that end, the Court also rejects Defendants' suggestion that Gates' "Complaint is devoid of any averment that [his] misdemeanor convictions did not relate to his suitability for the teaching position."[76] In his Complaint, Gates explains that the convictions arose from a 2009 incident in which he, then 17 years old, entered the open garage of a neighbor and took a beer out of their fridge.[77] In *Johnson v. Allegheny Intermediate Unit*, the Commonwealth Court of Pennsylvania held that a twenty-two-year-old felony conviction for aggravated assault did not "warrant the harsh result of a complete ban" from school employment.[78] Further, that Gates' convictions do not preclude his employment under Section 1-111 creates a presumption that they do not relate to his suitability for employment. Defendants may certainly argue at an eventual trial that they do, but drawing all inferences in Gates' favor, as it must on a motion to dismiss, the Court finds that Gates has satisfied his burden without further explanation regarding the relevance, or lack thereof, of his prior convictions.

Because the Court has found that Gates has stated a claim under CHRIA that Defendants improperly revoked an offer of employment based on prior convictions which did not bear on his suitability for the relevant position, it need not consider at this point the parties' arguments regarding the expungement of those convictions.

---

[76] BIS 19-20.
[77] Compl. ¶¶ 15-16.
[78] 59 A.3d 10, 25 (Pa. Commw. 2012).

## IV.    CONCLUSION

For the foregoing reasons, Defendants' Motion will be denied as to Count I and granted as to Count II. Gates may, by January 31, 2024, amend his Complaint in accordance with the Federal and Local Rules.[79] If Gates opts not to file an Amended Complaint, the Court respectfully encourages him to voluntarily dismiss his Count I claim due to a lack of subject matter jurisdiction.

An appropriate Order follows.

BY THE COURT:


_s/ Matthew W. Brann_
Matthew W. Brann
Chief United States District Judge

---

[79] *See, e.g.*, LR 15.1(b) (requiring all amended pleadings be accompanied with a copy of the original pleading in which stricken material has been lined through and any new material has been inserted and underlined or set forth in bold-faced type).