IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JACOB GATES,

        Plaintiff,

      v.

THE GRIER FOUNDATION and
GEOFFREY GRIER,

        Defendants.

No. 4:23-CV-01443

(Chief Judge Brann)

**MEMORANDUM OPINION**

**MARCH 27, 2024**

Before the Court is Defendants The Grier Foundation's and Geoffrey Grier's Motion to Dismiss Plaintiff Jacob Gates' Amended Complaint.[1] For the reasons below, the Court will grant Defendants' Motion.

## I.    BACKGROUND[2]

On June 13, 2023, Jacob Gates accepted an offer of employment for a position as a History Teacher with The Grier Foundation (the "Grier School").[3] Gates tentatively accepted the offer, which included an annual salary and faculty housing and food, on June 15, 2023.[4] Before Gates could formally accept the offer of employment, the Grier School was obliged under Pennsylvania law to require Gates to obtain Pennsylvania

---

[1]   Mot. to Dismiss Am. Compl., Doc. 20.
[2]   The Court accepts as true all well-pleaded allegations in the Amended Complaint. *Infra* Section II.
[3]   Am. Compl., Doc. 19 ¶ 11.
[4]   *Id.* ¶¶ 14-15.

and FBI criminal history background checks.[5] For FBI background checks, the Commonwealth of Pennsylvania contracts with IDEMIA, an entity which regularly engages in the practice of assembling or evaluating such reports.[6] As part of this process, Gates was required to register with and have his fingerprints taken by IDEMIA.[7] On July 12, 2023, the same day he provided fingerprints, he received an email from the "Commonwealth of Pennsylvania PASafeCheck system" notifying him that his criminal background results were ready to be viewed and providing him with an unofficial copy.[8] Gates downloaded the Report, which included a cover page purporting to be from the Pennsylvania Department of Education School Services Unit, and forwarded it to Gates School Human Resources Officer Lea Crofcheck.[9] The Report also included a UEID which allowed the Grier School to receive the official report online.[10]

Upon receipt of the Report, Grier School Director Geoffrey Grier and Head of School Kara Lawler called Gates to rescind the offer of employment.[11] The Report showed that, in 2009, Gates pleaded guilty to two misdemeanor counts of trespassing.[12] The convictions arose from an incident in which Gates, then 17 years old, entered and

---

[5]   *Id.* ¶¶ 18-23.
[6]   *Id.* ¶¶ 24-25.
[7]   *Id.* ¶¶ 26, 30.
[8]   *Id.* ¶ 31.
[9]   *Id.* ¶¶ 32-34.
[10]   *Id.* ¶¶ 29, 33-34.
[11]   *Id.* ¶ 37.
[12]   *Id.* ¶¶ 35-36.

took a beer from the open garage of a neighbor.[13] Grier accused Gates of being "dishonest," a "felon," and having acted in "bad faith."[14] Gates explained that the convictions had been expunged in 2020 and both he and his attorney Sally Slipian sent Lawler and Crofcheck records confirming as much.[15] Neither Lawler or Crofcheck responded, nor did anybody at the Grier School inform Gates of his right under the Fair Credit Reporting Act to dispute the accuracy of the Report with IDEMIA.[16] On July 20, 2023, Gates received a letter from an attorney representing the Grier School stating that, after "carefully review[ing]" the expungement documents, it had decided to uphold the recission of Gates' employment offer.[17]

Gates then initiated this litigation on August 20, 2023 with the filing of a Complaint alleging violations of the Fair Credit Reporting Act[18] and the Pennsylvania Criminal History Record Information Act.[19] Defendants previously moved to dismiss the Complaint, which the Court denied as to the Pennsylvania CHRIA claim, and granted as to the FCRA claim.[20] Gates filed an Amended Complaint on January 31, 2024 and Defendants filed a Motion to Dismiss the Amended Complaint for Failure to

---

[13]   *Id.*
[14]   *Id.* ¶¶ 38-39.
[15]   *Id.* ¶¶ 40-42.
[16]   *Id.* ¶¶ 43-44. Defendants note that the letter from the Grier School's attorney stated that "the School cannot proceed with retaining your services as a teacher," not that the decision to revoke the offer was upheld. Reply Br., Doc. 26 at 6-7 (quoting Reply Ex. A, Doc. 26-1). This strikes the Court as a distinction without a difference and, in any event, does not alter the outcome.
[17]   *Id.* ¶ 45.
[18]   *Id.* Count II.
[19]   *Id.* Count I.
[20]   Jan. 17, 2024 Mem. Op. and Ord., Docs. 17-18.

State a Claim and for Lack of Jurisdiction which is now fully briefed and ripe for disposition.[21]

## II.   LAW

"Under Article III, a case or controversy can exist only if a plaintiff has standing to sue."[22] "To establish Article III standing, a plaintiff bears the burden of showing three 'irreducible' elements."[23] "He 'must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'"[24] "Injury in fact is ''the invasion of a concrete and particularized legally protected interest' resulting in harm 'that is actual or imminent, not conjectural or hypothetical.'"[25] "'An injury is 'concrete' if it is 'real, or distinct and palpable, as opposed to merely abstract.'"[26]

"A motion to dismiss for want of standing is . . . properly brought pursuant to [Federal Rule of Civil Procedure] 12(b)(1), because standing is a jurisdictional matter."[27] Where a movant raises a facial challenge to standing—whether the

---

[21]   Supp. Br., Doc. 22; Opp'n. Br., Doc. 25; Reply Br., Doc. 26.
[22]   *United States v. Texas*, 599 U.S. 670, 675 (2023).
[23]   *Associated Builders & Contractors W. Pennsylvania v. Cmty. Coll. of Allegheny Cnty.*, 81 F.4th 279, 287 (3d Cir. 2023) (citing *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 244 (3d Cir. 2012); *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).
[24]   *Id.* (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)).
[25]   *Long v. Se. Pennsylvania Transportation Auth.*, 903 F.3d 312 (3d Cir. 2018) (quoting *Finkelman v. Nat'l Football League*, 810 F.3d 187, 193 (3d Cir. 2016); *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 278 (3d Cir. 2014)).
[26]   *Id.* (quoting *Finkelman*, 810 F.3d at 193; *N.J. Physicians, Inc. v. President of the U.S.*, 653 F.3d 234, 238 (3d Cir. 2011)).
[27]   *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007).

Complaint alleges facts sufficient to establish constitutional standing—courts "apply the same standard as on review of a motion to dismiss under Rule 12(b)(6)."[28]

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal for "failure to state a claim upon which relief can be granted." The United States Court of Appeals for the Third Circuit has instructed that, under the standard established by the Supreme Court of the United States in *Bell Atlantic Corp. v. Twombly*[29] and *Ashcroft v. Iqbal*,[30] a court reviewing the sufficiency of a pleading must take three steps: (1) "take note of the elements the plaintiff must plead to state a claim"; (2) "identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth"; and (3) "assume the[] veracity" of all "well-pleaded factual allegations" and then "determine whether they give rise to an entitlement to relief."[31]

## III.   ANALYSIS

The Fair Credit Reporting Act[32] imposes certain duties on users of consumer reports, including that:

> [A]ny person [who] takes any adverse action with respect to any consumer that is based in whole or in part on any information contained in a consumer report . . . shall . . . provide to the consumer an oral, written, or electronic notice of the consumer's right . . . to dispute, under [15 U.S.C. § 1681i], with a consumer reporting agency the accuracy or completeness of any information in a consumer report furnished by the agency.[33]

---

[28]   *In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 632-33 (3d Cir. 2017).
[29]   550 U.S. 544 (2007).
[30]   556 U.S. 662 (2009).
[31]   *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal quotations and citations omitted).
[32]   15 U.S.C. § 1681 *et seq.*
[33]   15 U.S.C. § 1681m(a)(4)(B).

Even if the Court assumes Gates' Amended Complaint is sufficient to state a claim that Defendants violated FCRA's notice requirement, that alone does not establish standing. "Article III standing requires a concrete injury even in the context of a statutory violation."[34] Gates cannot "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III."[35]

That is precisely what he has done. Previously, Defendants directed the Court to the Third Circuit's opinion in *Long v. SEPTA*,[36] arguing that it compelled dismissal for the "mere procedural violation" of failing to provide Gates notice of his FCRA rights.[37] The Court did not read *Long* so broadly, and permitted Gates to amend his Complaint if he could "allege facts sufficient to show that, if he were aware of his right to contest the accuracy of the Report with IDEMIA, it would have had an impact on his pending job offer."[38] Given a second bite at the apple, Gates alleges that, if he had been "given the reasonable time allotted under FCRA" to contest the Report, the "job offer would not have been withdrawn immediately."[39]

FCRA provides that an employer, "before taking any adverse action based in whole or in part on [a consumer] report . . . shall provide to the consumer to whom the report relates (i) a copy of the report; and (ii) a description in writing of the rights of the

---

[34] *Spokeo*, 587 U.S. at 341.
[35] *Id.* (citing *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009); *Lujan*, 504 U.S. at 572).
[36] 903 F.3d 312 (3d Cir. 2018).
[37] Jan. 17 Mem. Op. 6.
[38] *Id.* at 7.
[39] Am. Compl. ¶¶ 49-50.

consumer."[40] To the extent that FCRA entitles an employee to a "pre-adverse-action notice and review period,"[41] it is to provide "the opportunity to review the report and tell [the employer] if it is correct."[42] Gates concedes that he had the opportunity to review the Report prior to sending it to Defendants.[43] Thus, he also had the opportunity to inform Defendants that it was inaccurate. Then, when Grier called to rescind the employment offer, Gates explained that the convictions were expunged and provided the relevant records.[44] When the Grier School's attorney informed Gates a week later that the School had upheld its decision, it had all of the information that it would have had if Gates had the opportunity to dispute the Report with IDEMIA.

Whether the School considered that information may be relevant to Gates' state law claims, but it is of no significance under FCRA. Significantly, though FCRA requires employers to inform employees of their right to dispute the accuracy of a report with the reporting agency, it does not require the employer to wait until any such dispute is resolved before taking any adverse action.[45] Rather, any such dispute may occur in parallel to similar discussions with the employer.

---

[40]   15 U.S.C. § 1681b(3)(A).

[41]   *Cf.* Opp'n. 11.

[42]   *Using Consumer Reports: What Employers Need to Know,* Fed. Trade. Comm'n (Oct. 2016), available at https://www.ftc.gov/business-guidance/resources/using-consumer-reports-what-employers-need-know. *Cf.* Opp'n. 11 n.1 (citing *Using Consumer Reports*).

[43]   Am. Compl. ¶¶ 31-35.

[44]   *Id.* ¶¶ 40-42.

[45]   *Williams v. First Advantage LNS Screening Sols., Inc.*, 155 F. Supp. 3d 1233, 1247 (N.D. Fla. 2015).

Gates' argument that Defendants nevertheless did not allow sufficient time for such discussions is not well taken. As noted above, Defendants had the same information available to it as it would have if Gates had been able to successfully dispute the Report with IDEMIA. FCRA does not obligate Defendants to afford Gates the opportunity to argue that recission of the job offer would violate a separate state law.[46] Whether Defendants violated CHRIA is an issue distinct from any FCRA violation.[47]

## IV.   CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is granted as to Gates' FCRA claim for lack of standing. Accordingly, the Court lacks subject matter jurisdiction over Gates' remaining claim, brought under Pennsylvania law. Therefore, Defendants' Motion is granted in its entirety.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

[46]   *Cf.* Opp'n. 12 (suggesting that, if "[g]iven adequate notice, [Gates] might have engaged an attorney who could have argued that an expunged offense cannot be considered under CHRIA"). In any event, that Defendants have maintained that the rescission of the offer did not violate CHRIA suggests any such argument would have fallen on deaf ears.

[47]   *See* Jan. 17 Mem. Op. 19 (holding that Gates stated a claim for a violation of CHRIA regardless of whether the convictions are expunged).